IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOPHOS, INC., <br>     Plaintiff, <br><br> v. <br><br> RPOST HOLDINGS, INC., and <br> RPOST COMMUNICATIONS, LTD. <br>     Defendants. | Civil Action No. 1:13-cv-12856 (DJC) |
| RPOST HOLDNGS, INC. et al., <br>     Plaintiff, <br><br> v. <br><br> SOPHOS, INC., <br>     Defendant. | Civil Action No. 1:14-cv-13628 (DJC) |

**RPOST'S PRELIMINARY CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I. INTRODUCTION..................................................................................................1

II. FACTUAL BACKGROUND................................................................................1

    A. RPost And Its Innovations ........................................................................1

    B. The Patents-In-Suit ....................................................................................3

    C. Prior Claim Construction Orders ..............................................................4

III. LEGAL STANDARD ......................................................................................…..4

IV. ARGUMENT…………………………………………………………….............5

    A. "Message"………………………………………………………………..5

    B. "Transmitting . . ."………………………………………………………..6

    C. "Mail Transport Protocol Dialog"/ "Protocol Dialog"/ "Data Transport Protocol Dialog"…………………………………………………………....7

    D. "First Information"………………………………………………………..8

    E. "Portions Of Dialog"…………..……………………………………….......9

    F. "Before The Message Is Authenticated"………………………………….9

    G. "Mail Transport Agent"………………………………………………........10

    H. "Special Processing"/ "Special Process"…………………………..………10

    I. "A First Route"/ "A Second Route Different From The First Route"……...12

    J. "Normal Process Used By The Server"……………………………...............13

V. CONCLUSION………………………………………………………………..14

# TABLE OF AUTHORITIES

**Cases**

*Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998). ........................ 9

*Microsoft Corp. v. i4i Ltd. P'ship*, ___ U.S. ___, 131 S. Ct. 2238, 2242, 180 L. Ed. 2d 131 (2011). .......... 11

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2128-30 (U.S. 2014). ...................... 11

*Phillips v. AWH Corp et al.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005). ........................................... 8

*Worlds, Inc. v. Activision Blizzard, Inc.*, Civil Action No. 1:12-cv-10576-DJC, 2015 U.S. Dist. LEXIS 83311 (D. Mass. June 26, 2015). ................................................................................. 4, 11

I.     **INTRODUCTION**

Rather than cease its unlawful use of RPost's intellectual property, Sophos seeks declaratory relief and attempts to misuse the claim construction process to escape patent infringement liability.  It is axiomatic that patent claim terms must be construed consistent with their ordinary meaning as understood by a person of ordinary skill in the art in view of the claims themselves, the patent specification, and the patent prosecution history.  Sophos, however, advocates overly narrow and self-serving constructions.  Each of Sophos's litigation-induced constructions either contradicts previous claim construction orders or finds no support in the intrinsic record, including the plain language of the claims.  The motive behind Sophos's constructions is clear—when properly construed, the asserted claims are valid over the prior art and Sophos's accused products literally infringe the patents-in-suit.

As set forth more fully below and as RPost will demonstrate at the Claim Construction hearing, RPost's proposed claim constructions are consistent with the intrinsic record, the plain and ordinary meaning of the disputed terms as understood by one of ordinary skill in the art, and previous constructions of the disputed terms.  As such, Sophos's constructions should be rejected and RPost's constructions should be adopted.

II.    **FACTUAL BACKGROUND**

   **A.  RPost And Its Innovations**

RPost Holdings, Inc. and RPost Communications Limited are part the RPost Group of Companies, which is referred to commercially as RPost.  RPost, which stands for "Registered Post," developed and launched a Registered Email® service in 2000.[1]  The company's founders foresaw that electronic mail could replace regular mail for many business practices.[2]  Because a

---

[1] http://www.rpost.com/company  (last visited Dec. 21, 2015).
[2] *Id.*

1

substantial quantity of electronically exchanged information, such as contracts, purchase orders, invoices, monetary orders, notices, legal documents, and marketing materials are of utmost importance, senders want proof of transmission, delivery, and that the contents are unaltered.

RPost's innovative technologies address these longstanding, but unmet needs. RPost introduced a first-of-its-kind service that tracks what email content was sent and received, by whom and to whom, and when, in an innovative and elegant service offering.[3] For example, RPost's electronic mail tracking and analytics services provide a robust record of all of the transmitting, delivery or non-delivery, opening, forwarding, and time events associated with an electronic message.[4] RPost's services help its customers track, record, and prove with less cost, time, paper, and risk.[5]

RPost holds over 50 patents that have been granted in 21 different countries relating to its technology.[6] RPost also has numerous additional patents pending worldwide.[7] To stop Sophos's unsanctioned use of RPost's patents, RPost approached Sophos regarding a potential business arrangement that would give Sophos use of RPost's patent portfolio. Instead of agreeing to a business resolution, Sophos filed an action in this District for declaratory judgment of non-infringement and invalidity (Civil Action No. 1:13-cv-12856-DJC) of four RPost patents: U.S. Patent No. 8,209,389 ("the '389 patent"), U.S. Patent No. 8,224913 ("the '913 patent"), U.S. Patent No. 8,468,199 ("the '199 patent"), and U.S. Patent No. 8,504,628 ("the '628 patent"). RPost, in turn, filed an action for infringement of these same patents in the Eastern District of Texas (EDTX). The EDTX transferred RPost's action to this District (Civil Action No. 1:14-cv-

---

[3] http://www.rpost.com/technologies/  (last visited Dec. 21, 2015).
[4] *Id.*
[5] *Id.*
[6] http://www.rpost.com/technologies/#patents/  (last visited Dec. 21, 2015).
[7] *Id.*

13628). The Court set the same schedule for both actions and accordingly, this Brief applies to both actions.

### B. The Patents-In-Suit

Dr. Terrance Tomkow, an officer and director of RPost, is the sole inventor and original owner of the patents-in-suit, which have since been assigned to RPost Communications and exclusively licensed to RPost Holdings. The patents-in-suit all stem from the same parent application, which issued as U.S. Patent No. 7,966,372 ("the '372 patent"), and address the problem of verifying the transmission, delivery or non-delivery, and/or opening of electronic messages.

The '389 patent addresses the problem of verifying the receipt of an electronic message sent from a sender to a recipient through a server. The server receives a portion of a mail transport protocol dialog generated by the transmission of the message from the server to the recipient and an indication that the recipient has received the message, which in turn the server may provide to the sender.[8]

The '913 patent addresses the problem of verifying the delivery or non-delivery of an electronic message from a sender to a recipient through a server. The server records a portion of a mail transport protocol dialog, either Simple Mail Transport Protocol (SMTP) or Extended Mail Transport Protocol (ESMTP), in which a Mail Transport Agent for the recipient accepts or declines delivery of the message.[9]

The '199 patent, which is a continuation of the '389 patent, addresses the problem of verifying the failure to deliver an electronic message sent from a sender to a recipient through a server. The server receives a portion of a mail transport protocol dialog generated by the

---

[8] *See, e.g.,* Ex. C at claims 1, 7, and 14.
[9] *See, e.g.,* Ex. D at claim 1.

3

transmission of the message from the server to the recipient and an indication that the server has failed to deliver the message, which in turn the server may provide to the sender.[10]

The '628 patent, which is also a continuation of the '372 patent, address the problem of routing electronic messages according to a particular information that is contained in or added to the message. If the message lacks a particular indication, then the message proceeds along a first route from the sender to the recipient.[11] And if the message contains the particular indication, then the message proceeds along a second route different from the first route from the sender to the recipient.[12]

### C. Prior Claim Construction Orders

In 2013, Judge Rodney Gilstrap of the EDTX issued an order construing, among other patents, the '372 patent and U.S. Patent No. 7,865,557 ("the '557 patent")—a division of the '372 patent.[13] The '389, '199, and '628 patents are continuations of the '372 patent and the '913 patent is a division of the '557 patent. As such, the patents-in-suit share the same specification and file history as the '372 and/or '557 patents and share several common claim terms that have already been construed by Judge Gilstrap. Where applicable, RPost contends that the Court should adopt Judge Gilstrap's construction of these common terms.

### III. LEGAL STANDARD

The Court recently recited the general legal standard for claim construction in *Worlds, Inc. v. Activision Blizzard, Inc.*[14] RPost urges the Court to follow that standard in this case. Where necessary, RPost cites additional legal authority to support its arguments below.

---

[10] *See, e.g.,* Ex. E at claim 1.
[11] *See* Ex. F at claim 1.
[12] *Id.* at claim 2.
[13] Ex. B. at pp. 57-109.
[14] *Worlds, Inc. v. Activision Blizzard, Inc.*, Civil Action No. 1:12-cv-10576-DJC, 2015 U.S. Dist. LEXIS 83311 (D. Mass. June 26, 2015).

4

## IV.   ARGUMENT

RPost's arguments are made with reference to side-by-side comparisons of the disputed constructions, which is attached as Exhibit A for convenience.

### A.   "Message"[15]

The Court should adopt RPost's proposal and properly construe "a message" to mean "an electronic message."  Judge Gilstrap, whose analysis RPost incorporates by reference, already construed "a message" to mean and "an electronic message."[16]  As Judge Gilstrap found, the statement of the Field of the Invention, which appears within the Background of the Invention, discloses that the invention relates to electronic messages:

> This invention relates generally to a system and method for verifying delivery and content of an electronic message and, more particularly, to a system and method of later providing proof regarding the delivery and content of an e-mail message.[17]

Judge Gilstrap noted that this disclosure of an "e-mail message," particularly in such close proximity to the phrase "electronic message," demonstrates that the term "message" is not limited to being an e-mail.[18]  Further, Judge Gilstrap found that the specification explicitly states that the disclosed system and method are not limited to "e-mail":

> Although the above generally describes a system and method of verifying that an e-mail was sent and/or received, the present invention may apply to any electronic message that can be transmitted through a[n] electronic message network or through any electronic gate.[19]

For at least the same reasons that Judge Gilstrap found, the Court should adopt RPost's construction of "a message."

---

[15] Ex. A, No. 1.
[16] *See* Ex. B at p. 78-80.
[17] *See* Ex. C at 1:20-24.
[18] Ex. B at p. 80.
[19] *Id.*

5

Sophos does not dispute that "a message" should mean "an electronic message" except in the case of the '389 patent. For that patent, Sophos contends that because the claims recite "a mail transport protocol dialog" that "a message" as used in the '389 patent must be an e-mail. But as discussed below, Judge Gilstrap rejected this interpretation.[20] The Court should likewise reject Sophos's argument that "a message" is an e-mail in the context of the '389 patent and adopt RPost's construction of "message" for all of the patents-in-suit.

### B. "Transmitting . . ."[21]

RPost contends that the transmitting steps as recited in the '389 patent should be construed according to their ordinary meaning whereas Sophos contends that these steps must be limited "e-mailing." As noted above, the intrinsic record that shows that the patentee did not intend to limit the invention to email. In fact, the claims of the '389 patent do not even use the term email. Thus, the transmitting steps of the '389 patent should not be limited to "emailing."

On the other hand, Sophos appears to contend that because the '389 patent claims recite "a mail transport protocol dialog" they must be limited to emailing. Judge Gilstrap, however, rejected this interpretation:

> Further, Defendants have failed to justify limiting the mail transport protocol to being 'an email transport protocol such as SMTP, ESMTP, POP, POP3 or IMAP.' Instead, those protocols are disclosed as examples, and the specification explains that other types of electronic messages could be transmitted.[22]

Indeed, when the inventor refers to a protocol for transporting email, he specifies an e-mail and the specific protocol.[23] Although the patentee uses the term e-mail in the specification, the patentee chose to claim the invention more broadly. By claiming "a message" and generally "mail transport protocol dialog," the patentee evidently intended

---

[20] Ex. B. at p. 86.
[21] Ex. A, No. 2.
[22] Ex. B. at p. 86.
[23] Ex. C at 27:4-23.

that "message" mean something more than an email and that "transmitting" mean something more than emailing. Thus, Sophos's construction must be rejected.

### C. "Mail Transport Protocol Dialog"/ "Protocol Dialog"/ "Data Transport Protocol Dialog"[24]

The Court should adopt RPost's construction of the protocol dialog terms because they are virtually identical to the EDTX construction of "mail transport protocol dialog." RPost incorporates the EDTX's analysis by reference[25] and merely modifies the EDTX's construction to correspond to different types of transport protocol dialogs recited in the claims.

Sophos, on the other hand, modifies the EDTX construction to define "mail transport protocol dialog" and "transport protocol dialog" as "a conversation . . . consisting of commands and responses." This modification, however, conflicts with the definition of "a dialog" that Judge Gilstrap found in the prosecution history of the '372 patent and used to formulate his construction of mail transport protocol dialog:

> A dialog, as that term is understood by one skilled in the relevant art, is a list of commands and responses exchanged between an outgoing server and a destination address or server to transmit a message.[26]

Despite acknowledging that the prosecution history requires that this phrase include at least one command and at least one response, Judge Gilstrap expressly found that the specification and the claims weigh against limiting the dialog to only including commands and responses.[27] Thus, to the extent that Sophos's construction seeks to limit the dialog terms to only commands and responses, it must be rejected.

Sophos further attempts to limit the EDTX's construction by requiring that a protocol dialog and a mail transport protocol dialog be limited to an e-mail. As noted above, this

---

[24] Ex. A, Nos. 3, 5, and 6.
[25] Ex. B at pp. 81-87.
[26] Ex. B at pp. 84-85; Ex. G.
[27] *See* Ex. B at pp. 85-86.

7

limitation is completely at odds with the intrinsic record, which expressly states that it is not necessary to the invention that messages be e-mails. This limitation also conflicts with Judge Gilstrap's construction of "a message" as an "electronic message." As such, the Court should reject Sophos's construction and adopt RPost's.

### D. "First Information"[28]

The Court should construe "a first information" according to its ordinary meaning, or alternatively "information regarding the transmission and/or delivery of a message." The plain claim language shows that a first information need only include at least these two types of information. For example, the claims of the '389 patent provide that the first information is formed from "at least a portion of the mail transport protocol dialog and the indication of the receipt of the message by the recipient."[29] Similarly, the claims of the '199 patent provides that the first information is formed from "at least a portion of the data transport protocol dialog and the indication of the failure to deliver the message by the recipient."[30]

Sophos's construction, on the other hand, requires that a first information include "a record of the message recipient" and "the message content." This information is not related to the transmission or delivery of a message and the plain claim language provides no evidence that the first information must include this information. The only way that Sophos can support its construction is by importing these limitations from the specification of the '389 and '199 patents, which is improper.[31]

Similarly, the independent claims of the '389 and '199 patent provide no evidence that the first information must be "a non-forgeable record" as Sophos contends. At most, dependent

---

[28] Ex. A, No. 4.
[29] *See, e.g.,* Ex. C at claim 1.
[30] *See, e.g.,* Ex. E at claim 1.
[31] *Phillips v. AWH Corp et al.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005).

claim 4 of the '389 patent and dependent claim 6 of the '199 patent require that the first information is "an authenticatible information which also includes a plurality of digits in a unique sequence."[32]  Because this limitation appears in dependent claims, the corresponding independent claims cannot be so limited.[33]  Thus, Sophos has no basis for limiting a first information to a non-forgeable record other than importing limitations from the '389 and '199 specifications and the Court must reject Sophos's construction.

### E.  "Portions Of Dialog"[34]

RPost contends that this term should be construed according to its ordinary meaning that the plain claim language should control.  Sophos's construction makes three changes to the plain claim language: (1) it replaces "dialog" with "the conversation"; (2) it adds the phrase "sufficient to show"; and (3) it deletes the term "delivery."  As noted above, Judge Gilstrap has already construed "a dialog" to mean "a list of at least one command and one response."  In addition, the plain claim language does not require that the record portion of the dialog be "sufficient to show that the receiving Mail Transport Agent has accepted or declined the transmitted message"—it just requires that some portion be recorded.  Finally, the plain claim language requires that the recorded portion includes those portions "in which the receiving Mail Transport Agent has accepts or declines delivery of the transmitted message"—not merely accepted or declined the transmitted message.  Because Sophos's construction changes the meaning of the plain claim language, which is understandable and does not require any construction, it must be rejected.

### F.  "Before The Message Is Authenticated"[35]

---

[32] *See* Ex. C at claim 4; Ex. E at claim 6.
[33] *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998).
[34] Ex. A, No. 5.
[35] Ex. A, No. 6.

9

The Court should adopt RPost's construction of this phrase because it is consistent with the EDTX's construction.  The EDTX construed "authentication of the message" to mean "proving the content and delivery of an electronic message" and rejected the notion that the phrase "before any authentication of the message" requires a step of performing authentication.[36]  RPost incorporates the EDTX's analysis by reference.

### G. "Mail Transport Agent"[37]

RPost contends that mail transport agent (MTA) should be construed consistent with its plain meaning, which is "software that transfers electronic messages from one computer to another."  Indeed, computer dictionaries define MTA as "software that transfers electronic mail messages from one computer to another."[38]

Sophos contends that an MTA is a program executing on a computer "that routes electronic mail messages along a network path from the sender to a recipient."  Again, the principle dispute between the parties concerns whether this term is limited to e-mail.  Although MTAs may route e-mails, as explained above, the plain claim language and the intrinsic record show that the claims are not limited to the transfer of an e-mail.  Hence, Sophos's construction should be rejected.

### H. "Special Processing"/ "Special Process"[39]

The terms "special processing" and "special process" should be understood according to their ordinary meaning in the context of the claims and are not indefinite as Sophos contends.  The claims containing these terms are presumed valid and Sophos bears the burden of proving

---

[36] Ex. B at pp. 92-95.
[37] Ex. A, No. 7.
[38] See http://en.wikipedia.org/wiki/Message_transfer_agent (last visited Dec. 21, 2015); Ex. H at p. 328; Ex. I at p. 223.
[39] Ex. A, No. 8.

indefiniteness by clear and convincing evidence.[40]  Sophos cannot meet this burden because such evidence does not exist in the intrinsic record.

First, these terms are understandable from the plain claim language.  For example, "special processing" is part of the phrase "the particular indication identifying the message as requiring special processing."[41]  The term "special" plainly indicates that the processing involves an action be taken with respect to the message other than just "processing."  Dependent claims 2-8 provide seven different examples of such actions including (1) "transmitting the message to the recipient through a second route different from the first route" (claim 2); (2) "transmitting the message to a second server remote from the recipient to register the message" (claim 3); (3) "transmitting the message to a second server remote from the recipient to process the message in a special manner to provide for at least one parameter selected from a list of parameters" (claim 4); (4) "encrypting the message to transmit the message in a more private manner" (claim 5); (5) "preparing for recipient electronic signature on the message or attachments to the message" (claim 6); (6) "recording the content of a reply to the message transmitted by a recipient of the message" (claim 7); and (7) "processing the message by the server through a special process different than the normal process used by the server" (claim 8).[42]  Thus, a person of ordinary skill in the art reading the claims as a whole would readily understand what "special processing" means within the context of the claims.[43]

Similarly, the term "special process" may also be readily understood within the context of the claims.  This term appears in the phrase "processing the message by the server in accordance with the particular indication includes processing the message by the server through a special

---

[40] *Worlds, Inc.*, 2015 U.S. Dist. LEXIS 83311 at * 7 (*citing Microsoft Corp. v. i4i Ltd. P'ship*,___ U.S.___, 131 S. Ct. 2238, 2242, 180 L. Ed. 2d 131 (2011).)
[41] *See* Ex. F at claim 1.
[42] *Id.* at claims 2-8.
[43] *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2128-30 (U.S. 2014).

process different than the normal process used by the server."[44]  A person of ordinary skill in the art would understand this plain claim language to mean that "a special process" is a process that the server would not normally perform if the particular indication were not added to the message. In other words, the plain claim language distinguishes a "special process" from a "normal process" just as if the claim had said a first process and a second process.  Thus, the claims merely recite two different processes for processing an electronic message as determined by the presence of the particular indication.  Because this understanding can be gleaned from the plain claim language, the Court should adopt RPost's construction and reject Sophos's argument that these terms are indefinite.

## I. "A First Route"/ "A Second Route Different From The First Route"[45]

RPost contends that "a route" should be construed to mean "a path taken by a message from a sender to a recipient via a network."[46]  RPost's construction is consistent with the intrinsic record, which repeatedly uses the term "route" to refer to a path taken by a message: (1) "[t]he receipt includes a non-forgeable record of the message recipient(s), the message content, and the time(s) and *route(s) of delivery*";[47] (2) "the route by which the message traveled"[48]; and (3) "the system may provide to message recipient 68 a receipt 74 or other verifiable confirmation that . . . the message purports to be *delivered via a certain network route* . . .".[49]

Sophos's construction of a "first route", however, adds the additional limitation "via a network that does not include an intermediate relay through a mail transfer agent at a different network address."  A person of ordinary skill would not understand the simple term "route" to

---

[44] *Id.* at claim 8.
[45] Ex. A, Nos. 11-12.
[46] *See, e.g.,* Ex. I at p. 215 (defining "message routing" as "selection of a suitable path between the source and destination of a message in a network.").
[47] *Id.* at 15:46-48.
[48] *Id.* at 17:41-42.
[49] *Id.* at 26:10-11.

exclude intermediate relays because this construction conflicts with the intrinsic record. The specification expressly states that "[i]t is common practice for Internet e-mails to be relayed from MTA to MTA until they reach their final destination."[50] In describing a delivery receipt, the specification also states the receipt may include "a list of all the Internet 'stations' that the message passed through en route to its destination."[51] Sophos's construction even conflicts with some dictionaries, which define "route" in the networking context to include intermediate relays: "[t]he sequence of hosts, routers, bridges, gateways, and other devices that network traffic takes, or could take, from its source to its destination."[52]

Moreover, Sophos's construction is not even supported by the plain claim language in which the "route" terms appear. For example, claim 2 recites "processing the message by the server in accordance with the particular indication includes transmitting the message to the recipient through a second route different from the first route."[53] Although Sophos's construction of a "second route" includes "an intermediate relay," neither the plain claim language nor the specification contain any evidence that the particular indication determines whether a route includes an intermediate relay or not.

Further, Sophos's construction injects unnecessary ambiguity into the simple term "route" because it is not clear what "a different network" (in Sophos's construction of "a first route") or "a different location" (in Sophos's construction of "a second route") is referring to. As such, the Court should reject Sophos's construction and adopt RPost's construction.

J. "Normal Process Used By The Server"[54]

---

[50] *Id.* at 11:49-50.
[51] *Id.* at 1:51-55.
[52] http://dictionary.reference.com/browse/route?s=t (last visited Dec. 18, 2015).
[53] Exhibit F at claim 2.
[54] Ex. A, No. 13.

The term "normal process used by the server" may also be readily understood within the context of the claims and is not indefinite as Sophos contends. Again, Sophos cannot satisfy its heavy burden that this term is indefinite based on the intrinsic record. This term appears in the phrase "processing the message by the server in accordance with the particular indication includes processing the message by the server through a special process different than the normal process used by the server."[55] A person of ordinary skill in the art would understand this plain claim language to mean that "the normal process" is a process that the server would perform if the particular indication were not added to the message. In other words, the plain claim language distinguishes a "special process" from a "normal process" just as if the claim had said a first process and a second process. Because "normal process used by the server" can be understood from the plain claim language, the Court should adopt RPost's construction and reject Sophos's argument that this term is indefinite.

## V.      CONCLUSION

In conclusion, RPost proposes claim constructions consistent with the plain meaning of the claim language and fully supported by the intrinsic record of the patents-in-suit. Sophos, on the other hand, proposes constructions that violate basic claim construction principles, contradict previous constructions of the same terms, and find no support in the plain claim language or the intrinsic record. Accordingly, the Court should reject Sophos's constructions and adopt RPost's constructions.

---

[55] Ex. F at claim 8.

14

Dated: December 22, 2015							Respectfully Submitted,

By: */s/ Lewis E. Hudnell, III*
Paul J. Cronin, BBO # 641230
NUTTER McCLENNEN & FISH, LLP
155 Seaport Boulevard
Boston, MA 02210
Tel: 617-439-2000
Fax: 617-310-9000
Email: pcronin@nutter.com

Lewis E. Hudnell, III
(Admitted *Pro Hac Vice)*
HUDNELL LAW GROUP P.C.
800 W. El Camino Real Suite 180
Mountain View, California 94040
Tel:  650.564.7720
Fax:  347.772.3034
Email:  lewis@hudnelllaw.com

ATTORNEYS FOR
RPOST HOLDINGS INC.
RPOST COMMUNICATIONS LIMITED

**CERTIFICATE OF SERVICE**

  I, Lewis E. Hudnell, III, certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on December 22, 2015.

                */s/Lewis E. Hudnell, III*
                Lewis E. Hudnell, III