**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

)
)
SOPHOS INC.,                                )
)
            Plaintiff,              )
)
          v.                       )       **Civil Action No. 13-12856-DJC**
)
RPOST HOLDINGS, INC. and RPOST     )
COMMUNICATIONS LIMITED,            )
)
          Defendants.            )
)
)
_____)
)
)
RPOST HOLDINGS, INC. and RPOST     )
COMMUNICATIONS LIMITED,            )
)
          Plaintiffs,             )
)
         v.                       )       **Civil Action No. 14-13628-DJC**
)
SOPHOS INC.,                                )
)
          Defendant.            )
)
)
_____)

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                 **June 3, 2016**

**I.    Introduction**

      Sophos, Inc. ("Sophos") seeks a declaratory judgment that claims of U.S. Patent Nos.

8,504,628 ("'628 patent"), 8,224,913 ("'913 patent"), 8,209,389 ("'389 patent") and 8,468,199

("'199 patent") (collectively, the "patents-in-suit") are invalid or that Sophos does not infringe them.  D. 1.[1]  In a separate action, RPost Holdings, Inc. and RPost Communications Limited (collectively, "RPost") allege that Sophos infringes on the patents-in-suit's claims.  No. 14-cv-13628, D. 1.  The parties now seek construction of disputed claim terms and Sophos has filed a motion for judgment on the pleadings in both cases.  D. 95; No. 14-cv-13628, D. 71.  After extensive briefing and a <u>Markman</u> hearing, the Court's claim construction follows.  For the reasons below, the Court DENIES Sophos's motion for judgment on the pleadings.

## II.     Patents-in-Suit

This lawsuit concerns patents that verify the delivery and integrity of electronic messages.  D. 1-2 ('628 patent), D. 1-3 ('913 patent), D. 1-4 ('389 patent); D. 1-5 ('199 patent).  RPost contends that Sophos infringes claims 1-5, 7-19, 21-27 and 30 of the '628 patent, claims 1, 4, 5, 7 and 10-16 of the '389 patent, claims 1-3, 6 and 7 of the '199 patent and claims 1 and 2 of the '913 patent.  D. 98 at 8.  The patents-in-suit stem from the same parent application, which issued as U.S. Patent No. 7,966,372 ("'372 patent").  The '628 and '389 patents are continuations of the '372 patent, and the '199 patent is a continuation of the '389 patent.  D. 1-2 at 2, D. 1-4 at 2, D. 1-5 at 2.  The '913 patent is a division of U.S. Patent No. 7,865,557 ("'557 patent"), which is in turn a division of the '372 patent.[2]  D. 1-3 at 2.  The '628 patent was filed on June 4, 2010 and issued on August 6, 2013.  D. 1-2 at 2.  The '913 patent was filed on

---

[1] All docket citations are to the case filed by Sophos (Civil Action No. 13-cv-12856), unless otherwise indicated.

[2] A continuation application is "a second application for the same invention claimed in a prior nonprovisional application and filed before the original prior application becomes abandoned or patented." <u>Antares Pharma, Inc. v. Medac Pharma Inc.</u>, 771 F.3d 1354, 1358 (Fed. Cir. 2014) (citations and internal quotation marks omitted).  A divisional application is "another type of continuing application and is intended for distinct inventions, carved out of a pending application and disclosing and claiming only subject matter disclosed in the earlier or parent application." <u>Id.</u> (citations, brackets and internal quotation marks omitted).

November 22, 2010 and issued on July 17, 2012.  D. 1-3 at 2.  The '389 patent was filed on

December 29, 2010 and issued on June 26, 2012.  D. 1-4 at 2.  The '199 patent was filed on June

25, 2012 and issued on June 18, 2013.  D. 1-5 at 2.

## III.    Procedural History

On November 12, 2013, Sophos sued RPost in the District of Massachusetts.  D. 1.  One

day later, RPost sued Sophos in the Eastern District of Texas.  No. 14-cv-13628, D. 1.  The Court

denied RPost's motion to transfer Sophos's case to the Eastern District of Texas.  Sophos, Inc. v.

RPost Holdings, Inc., No. 13-cv-12856-DJC, 2014 WL 2434637, at *1 (D. Mass. May 30, 2014).

Meanwhile, Judge Gilstrap of the Eastern District of Texas ordered that RPost's case be

transferred to the District of Massachusetts.  RPost Holdings, Inc. v. Sophos, Inc., No. 2:13-cv-

959, 2014 WL 10209205, at *2 (E.D. Tex. Aug. 20, 2014).  Both cases are now before the Court

as related cases.

On December 30, 2014, the Court denied RPost's motion to dismiss for lack of subject

matter jurisdiction or to decline to adjudicate the matter under the Declaratory Judgment Act.

Sophos, Inc. v. RPost Holdings, Inc., No. 13-cv-12856-DJC, 2014 WL 7409588, at *1 (D. Mass.

Dec. 30, 2014).  Sophos has now filed a motion for judgment on the pleadings under Fed. R. Civ.

P. 12(c) in both cases.  D. 95; No. 14-cv-13628, D. 71.  After claim construction briefing, the

Court held a Markman hearing, heard argument on Sophos's Rule 12(c) motion and took both

matters under advisement.  D. 122.

## IV.    Standard of Review

### A.    Claim Construction

The construction of disputed claim terms is a question of law.  Markman v. Westview

Instruments, Inc., 517 U.S. 370, 372 (1996). The Court must construe "the meaning that the term would have to a person of ordinary skill in the art in question at the time of . . . the effective filing date of the patent application." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005). The Court must look to "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Id. at 1314 (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1116 (Fed. Cir. 2004)) (internal quotation marks omitted).

Claim construction begins with the words of the claims themselves where "the claims of a patent define the invention to which the patentee is entitled the right to exclude." Id. at 1312 (quoting Innova, 381 F.3d at 1115) (internal quotation marks omitted). Claims "are generally given their ordinary and customary meaning" and can "provide substantial guidance as to the meaning of particular claim terms." Id. at 1312, 1314 (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)) (internal quotation marks omitted). "[T]he context in which a term is used in the asserted claim can be highly instructive." Id. at 1314. A claim itself may provide the means for construing a term where, for instance, the claim term is consistently used throughout the patent. Id. As a result, "the meaning of a term in one claim is likely the meaning of that same term in another." Abbott GmbH & Co., KG v. Centocor Ortho Biotech, Inc., No. 09-cv-11340-FDS, 2011 WL 948403, at *3 (D. Mass. Mar. 15, 2011) (citing Phillips, 415 F.3d at 1314).

Claims are not to be read alone, but "are part of a fully integrated written instrument, consisting principally of a specification that concludes with the claims." Id. (citation omitted). "Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed

term." Id. (quoting Vitronics, 90 F.3d at 1582) (internal quotation mark omitted). The specification, as the patentee's description of the invention, defines "the scope and outer boundary" of the claims and, thus, "claims cannot be of broader scope than the invention that is set forth in the specification." On Demand Mach. Corp. v. Ingram Indus., Inc., 442 F.3d 1331, 1338-40 (Fed. Cir. 2006). In looking to the specification in interpreting the meaning of a claim, the Court must be careful not to "import[] limitations from the specification into the claim." Phillips, 415 F.3d at 1323. This standard may "be a difficult one to apply in practice," id., but "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction," id. at 1316 (quoting Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

After looking to the claims themselves and the specification, "a court should also consider the patent's prosecution history, if it is in evidence." Id. at 1317 (citation and internal quotation marks omitted). The prosecution history, as evidence of how the inventor understood the patent, "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Id. (citing Vitronics, 90 F.3d at 1582-83). Because the prosecution history "often lacks . . . clarity," it is "less useful for claim construction purposes" and is given less weight than the claims and the specification. Id.

Finally, the Court may also consider extrinsic sources which can educate the Court "regarding the field of the invention" and in determining "what a person of ordinary skill in the art would understand claim terms to mean." Id. at 1319. Dictionaries and treatises often assist courts in understanding the underlying technology and "in determining the meaning of particular

terminology to those of skill in the art of the invention." Id. at 1318. Generally, extrinsic evidence is considered "less reliable than the patent and its prosecution history in determining how to read claim terms," id., and thus "is less significant than the intrinsic record in determining the legally operative meaning of claim language," id. at 1317 (citations and internal quotation marks omitted).

### B.    Indefiniteness

The Patent Act requires that a patent specification "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant . . . regards as the invention." 35 U.S.C. § 112(b). Definiteness is measured "from the viewpoint of a person skilled in [the] art at the time the patent was filed." Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2128 (2014) (citation, internal quotation marks and emphasis omitted). Additionally, "claims are to be read in light of the patent's specification and prosecution history." Id. Section 112 thus requires "that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." Id. at 2129. This requirement "mandates clarity, while recognizing that absolute precision is unattainable." Id. A defendant "bears the burden of proving indefiniteness by clear and convincing evidence." Veracode, Inc. v. Appthority, Inc., No. 12-cv-10487-DPW, 2015 WL 5749435, at *18 (D. Mass. Sept. 30, 2015) (citing Tech. Licensing Corp. v. Videotek, Inc., 545 F.3d 1316, 1327 (Fed. Cir. 2008)).

### C.    Motion for Judgment on the Pleadings

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) "is treated much like a Rule 12(b)(6) motion to dismiss." Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citing Curran v. Cousins, 509 F.3d 36, 43-44 (1st Cir. 2007)). A court "must view the

facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof." Sandborn v. Avid Tech., Inc., No. 11-cv-11472-FDS, 2013 WL 4784265, at *2 (D. Mass. Sept. 5, 2013) (quoting R.G. Financial Corp. v. Yergara–Nuñez, 446 F.3d 178, 182 (1st Cir. 2006)) (internal quotation mark omitted). In reviewing the motion, the Court may "consider 'documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint.'" Curran, 509 F.3d at 44 (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). To survive a Rule 12(c) motion, "a complaint must contain factual allegations that raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint" are true" Pérez-Acevedo, 520 F.3d at 29 (citation and internal quotation mark omitted). "Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law."[3] Sandborn, 2013 WL 4784265, at *2 (citing In re Bilski, 545 F.3d 943, 951 (Fed. Cir. 2008)).

## V.       Construction of Disputed Claims

The parties dispute the meaning of the following terms and the Court resolves these

---

[3] RPost argues that for Sophos to prevail upon its motion for judgment on the pleadings, Sophos must establish that the patents-in-suit do not cover patentable subject matter by clear and convincing evidence because a presumption of validity applies. D. 102 at 11-12. Courts, however, have noted that the law appears unsettled on this issue and have applied different standards. See, e.g., Esoterix Genetic Labs. LLC v. Qiagen Inc., No. 14-cv-13228-ADB, 2015 WL 5680331, at *4 & n. 4 (D. Mass. Sept. 25, 2015) (noting that "[l]ower courts appear to be divided on this issue" because "there is no binding precedent from the Federal Circuit" and declining to resolve the question "because the debate over the appropriate burden of proof appears to be purely academic in the context of this case"); DataTern, Inc. v. Microstrategy, Inc., No. 11-cv-11970-FDS, 2015 WL 5190715, at *7 (D. Mass. Sept. 4, 2015) (applying clear and convincing standard to patent eligibility challenge); OpenTV, Inc. v. Apple, Inc., No. 14-cv-01622-HSG, 2015 WL 1535328, at *3 (N.D. Cal. Apr. 6, 2015) (declining to apply the clear and convincing standard). Because the Court concludes that the patents-in-suit are drawn to patentable subject matter even if the clear and convincing standard applies, the Court need not resolve this unsettled issue here.

disputes below.

A.   **'628 Patent**

1. *"special processing" / "special process" / "a normal process used by the server" / "the normal process used by the server"*

| Term | Sophos's Proposed Construction | RPost's Proposed Construction |
|---|---|---|
| special processing<br><br>('628 patent, Claims 1, 14, 30)<br><br>special processing<br><br>('628 patent, Claims 8, 23) | Indefinite under 35 U.S.C. § 112 | Not indefinite; ordinary meaning |
| a normal process used by the server"<br><br>('628 patent, Claim 8)<br><br>"the normal process used by the server"<br><br>('628 patent, Claim 23) | Indefinite under 35 U.S.C. § 112 | Not indefinite; ordinary meaning |

Sophos notes that each of the asserted claims of the '628 patent requires a "particular indication" in a message that identifies it as "requiring special processing."  D. 98 at 11 (citing '628 patent, claims 1, 14, 30).  Sophos contends that because the patent provides no guidance on what "special processing" means, the term is subjective and all asserted claims of the '628 patent are indefinite.  Id. at 10-11.  Sophos also notes that although claims 8 and 23 recite that a "special process" is "different than" the "normal process used by the server," what normal is according to the patent is "just as ambiguous as what is 'special.'"  Id. at 13.

RPost argues that Sophos is attempting to remove the term "special processing" from its context, when the term is objectively defined by the claims.  D. 105 at 5-7.  The '628 patent

"does not seek to define the boundary between what is special processing and what is not special processing," but "distinguishes between messages that have a particular indication . . . and those that do not." Id. at 6.  Because the method in claim 1 includes "processing the message by the server in accordance with the particular indication," RPost contends that special processing means "processing the message according to what the particular indication tells the server to do." Id. (internal quotation marks omitted).

The Court agrees with RPost.  The intrinsic record provides objective guidance that "special processing" refers to processing dictated by particular indications on the message, while the normal processing occurs when no particular indications exist.  As RPost points out, claims 4-7 and 18-21 provide examples of what special processing may entail.  D. 105 at 7; see, e.g., D. 1-2 at 33, claim 5 (stating "[t]he method of claim 1, wherein processing the message in a special manner includes encrypting the message to transmit the message in a more private manner"); D. 1-2 at 33, claim 6 (stating "[t]he method of claim 1, wherein processing the message in a special manner includes preparing for recipient electronic signature on the message or attachments to the message").  Sophos claims that those examples are not dispositive because they fail to limit the term.  D. 98 at 13.  But for a patent specification to be invalid for indefiniteness, "it must be insolubly ambiguous," where "reasonable efforts at claim construction prove futile." Trustees of Boston Univ. v. Everlight Elecs. Co., 109 F. Supp. 3d 344, 350-51 (D. Mass. 2015) (citations and internal quotation marks omitted).  Sophos has not shown by "clear and convincing evidence that 'a skilled artisan could not discern the boundaries of the claim.'"  Accentra, Inc. v. Staples, Inc., 500 F. App'x 922, 930 (Fed. Cir. 2013) (quoting Halliburton Energy Servs., Inc. v. M-I LLC, 514 F.3d 1244, 1249 (Fed. Cir. 2008)).

2.  *"first route" / "second route different from the first route"*

| Term | Sophos's Proposed Construction | RPost's Proposed Construction |
|---|---|---|
| first route<br><br>('628 patent, Claims 1, 2, 8, 14, 23, 30) | A path taken by a message from a sender's mail transfer agent to a recipient's mail transfer agent via a network that does not include an intermediate relay through a mail transfer agent at a different network address | Route: A path taken by a message from a sender to a recipient via a network |
| second route different from the first route<br><br>('628 patent, Claims 2, 15) | A path taken by a message from a sender's mail transfer agent to a recipient's mail transfer agent via a network that includes an intermediate relay through a mail transfer agent at a different network location | |

Claim 1 requires transmission of a message through a "first route if the message lacks the particular indication." D. 1-2 at 33. On the other hand, claim 2 requires transmission of a message through a "second route different from the first route" "in accordance with the particular indication." Id. Both parties agree that the first and second routes refer to different network paths. D. 98 at 26, D. 105 at 15.

The parties, however, disagree whether these routes should be limited to Figure 3 of the '628 patent:



In Figure 3, if a message does not have the "(R)" indication, the message is transmitted without an intermediate relay to the recipient's mail transport agent. D. 1-2 at 11, Fig. 3. Sophos contends that this route defines the "first route." D. 103 at 15-16. If a message does have the "(R)" indication, the message is transmitted to a separate registering mail transport agent—an intermediate relay through a mail transfer agent—before transmission to the recipient's mail transport agent. D. 1-2 at 11, Fig. 3. Sophos contends that this route defines the "second route." D. 103 at 16-17. In response, RPost argues that Sophos's proposed construction seeks to limit these terms to the embodiment disclosed in Figure 3. D. 105 at 15.

The Court agrees with RPost. As RPost argued at the hearing, "[t]he use of the terms 'first' and 'second' is a common patent-law convention to distinguish between repeated instances

of an element or limitation."   3M Innovative Properties Co. v. Avery Dennison Corp., 350 F.3d

1365, 1371 (Fed. Cir. 2003).   Moreover, Sophos's attempt to define these terms by whether an

intermediate relay occurs is problematic, because as Sophos acknowledged at the hearing, even if

the term "first route" was confined to Figure 3, intermediate servers could exist between the

sender's mail transport agent and the recipient's mail transport agent.   Accordingly, the Court

adopts RPost's construction of the term "route" because claims 1 and 2, for example, already

show (and the parties agree) that the first route and second route are different paths.

> 3.   *"message"*

| Term | Sophos's Proposed Construction | RPost's Proposed Construction |
|------|-------------------------------|-------------------------------|
| message<br><br>('389 patent, All asserted claims)<br><br>('913 patent, All asserted claims)<br><br>('199 patent, All asserted claims)<br><br>('628 patent, All asserted claims) | No construction necessary | An electronic message |

RPost argues that the Court should construe the term "message" in all four patents to

mean "electronic message."   D. 101 at 8.   For support, RPost points out that in RMail Ltd. v.

Amazon.com, Inc., No. 2:10-cv-258-JRG, 2013 WL 968246, at *51 (E.D. Tex. Mar. 12, 2013),

Judge Gilstrap construed the term "message" in the '372 patent and the '557 patent to mean

"electronic message."   By contrast, Sophos argues that no construction is necessary.   D. 103 at

10.   That Judge Gilstrap construed the term in a different case with different parties and different

argument does not overcome the heavy presumption in favor of a claim term's ordinary meaning.

Id.

The Court agrees with Sophos that no construction is necessary.  In the case before Judge Gilstrap, both parties agreed that the term "message" referred to electronic messages, but disputed whether the term was limited to email.  Amazon.com, 2013 WL 968246, at *51.  There is also no reason to deviate from the term's plain meaning because RPost has not shown that the inventor acted as his own lexicographer for this term.  Phillips, 415 F.3d at 1316.

**B.**    **'389 Patent**

*1.  "mail transport protocol dialog"*

| Term | Sophos's Proposed Construction | RPost's Proposed Construction |
|------|-------------------------------|-------------------------------|
| mail transport protocol dialog<br><br>('389 patent, Claims 1, 7, 14) | A conversation between a sender and a receiver consisting of commands and responses to transmit an e-mail Message | Data including a sequence of at least one mail transport protocol command and at least one mail transport protocol response exchanged between devices during transmission of the message. |

Claim 1 of the '389 patent states that "a mail transport protocol dialog" is generated during the transmission of the message from the server to the recipient.  D. 1-4 at 37.  Sophos argues that this dialog is a conversation with more than one command and response but limited to the transmission of email.  D. 103 at 7-8.  RPost argues that the term is not limited to multiple commands and responses nor to email.  D. 101 at 10, D. 105 at 10-11.

Two other courts have construed this term and they have adopted constructions like the one proposed by RPost.  In Amazon.com, Inc., 2013 WL 968246, at *52, Judge Gilstrap construed this term from the '372 patent, from which the '389 patent is a continuation.  He concluded that in the term, dialog was not limited to only commands and responses because

certain claims of the '372 patent recited that the dialog also included data such as receipt by the recipient and server identities.  Id. at *55.  He also noted that the prosecution history requires that the list include at least one command and one response, a construction that is consistent with the plain meaning of "dialog."  Id.  Finally, he reasoned that the term was not limited to email because the specification explained that other types of electronic messages could be transmitted.  Id.  Thus, the term "mail transport protocol dialog" meant "data including a list of at least one command and at least one response exchanged between devices during the transmission of a message."  Id.

In GoDaddy.com, LLC v. RPost Commc'ns Ltd., No. 14-cv-00126-PHX-JAT, 2016 WL 212676, at *28 (D. Ariz. Jan. 19, 2016), Judge Teilborg construed the term in the '389 patent, the same patent here.  After discussing Judge Gilstrap's construction, Judge Teilborg stated that he agreed and adopted a similar construction:  "data including at least one mail transport protocol command and at least one mail transport protocol response exchanged between devices during transmission of a message."  Id. at *30.

Although the earlier constructions of this term are not binding, "unless otherwise compelled . . .  the same claim term in the same patent or related patents carries the same construed meaning."  In re Rambus Inc., 694 F.3d 42, 48 (Fed. Cir. 2012) (quoting Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1334 (Fed. Cir. 2003)) (internal citation omitted). After reviewing the prior decisions, the Court finds them persuasive, especially in light of the absence of compelling reasons why these constructions should not apply.  Like the '372 patent, the '389 patent also states that the mail transport protocol dialog includes data other than commands and responses, such as timestamps. Amazon.com, 2013 WL 968246, at *54; D. 1-4 at 31, 15:43-46.  Similarly, the specification in the '389 patent also states that "[a]lthough the above

generally describes a system and method of verifying that an e-mail was sent and/or received, the present invention may apply to any electronic message that can be transmitted through a[n] electronic message network or through any electronic gate," messages such as "text, audio, video, graphics, data, and attachments of various file types."  Amazon.com, 2013 WL 968246, at *55; D. 1-4 at 37, 27:24-30.   Accordingly, the Court adopts RPost's construction with minor changes.   Instead of using RPost's "sequence" language, the Court uses "list," which is the language used in the prosecution history.  Amazon.com, Inc., 2013 WL 968246, at *54.  "Mail transport protocol dialog" thus means "data including a list of at least one mail transport protocol command and at least one mail transport protocol response exchanged between devices during transmission of the message."  Id. at *56.

     *2.  "first information"*

| Term | Sophos's Proposed Construction | RPost's Proposed Construction |
|---|---|---|
| "first information"<br><br>('389 patent, Claims 1, 4-5, 7 11-15)<br><br>('199 patent, Claim 1) | A non-forgeable record of the message recipient(s), the message content, and the time(s) and route(s) of delivery | Ordinary meaning; no construction necessary<br><br>Alternatively, information regarding the transmission and/or delivery of a message. |

20     The term "first information" appears in several claims of the '389 patent.  For example, claim 1 recites:

> A method of transmitting a message from a sender to a recipient through a server displaced from the recipient, the steps at the server comprising:
>
>   . . .
>
>   forming at the server a first information from the at least a portion of the mail transport protocol dialog and the indication of the receipt of the message by the recipient; . . .

D. 1-4 at 37, 27:58-60, 28:1-3.

Claim 7 recites:

> A system for transmitting a message through an electronic mail system from an originating processor to a recipient processor and providing proof of receipt of the message by the recipient process, comprising:
>
>> a server displaced from the originating processor, the server capable of being configured by software commands to:
>>
>> . . .
>>
>> Generate a first information including the indication of receipt of the message from the recipient of the message from the recipient processor and at least a portion of the mail transport protocol dialog generated by the electronic mail system during transmission of the message from the server to the recipient processor.

D. 1-4 at 37, 28:33-39, 28:47-52.

Finally, claim 1 of the '199 patent recites:

> A method of transmitting a message from a sender to a recipient through a server displaced from the recipient, the steps at the server comprising:
>
>> . . .
>>
>> forming at the server a first information from the at least a portion of the data transport protocol dialog and the indication of the failure to deliver the message by the recipient; . . .

D. 1-5 at 35, 27:58-60, 28:1-4.

Sophos argues that the term in the '389 patent means a delivery receipt because the term "first information" contains information about whether a message was successfully delivered. D. 98 at 23 (citing D. 1-4 at 37-38, claims 1, 7, 14). Because the term refers to a receipt, Sophos contends the specification provides a precise definition: "a non-forgeable record of the message recipient(s), the message content, and the time(s) and route(s) of delivery." Id. at 24 (citing D. 1-4 at 31, 15:44-46).

RPost argues that the plain language of the claim shows that a first information "need

only include" information regarding the transmission and the delivery of a message.  D. 101 at

11.  As RPost posits, Sophos is not construing the claims in light of the specification, but

improperly importing limitations from the specification.  Id. at 11-12 (citing Phillips, 415 F.3d at

1323).

The Court agrees with RPost and concludes that "first information" means "information

regarding the transmission and/or delivery of a message."  The claims in the '389 and '199

patents do not state that the term is a receipt.  D. 105 at 14.  Instead, claim 7 of the '389 patent

states that the "first information" generated "include[s] the indication of receipt of the message

from the recipient of the message from the recipient processor and at least a portion of the mail

transport protocol dialog."  D. 1-4 at 37, 28:47-49.  Even if a delivery receipt were an example of

a "first information," "it is well established that 'particular embodiments appearing in the

specification will not generally be read into the claims.'"  Mikkelsen Graphic Eng'g, Inc. v.

Zund Am., Inc., 541 F. App'x 964, 971 (Fed. Cir. 2013).

*3. "transmitting . . . the first information to the sender" / transmit the authenticatable information*

| Term | Sophos's Proposed Construction | RPost's Proposed Construction |
|---|---|---|
| transmitting . . . the first information to the sender<br><br>('389 patent, Claims 1, 5)<br><br>transmit the authenticatable information<br><br>('389 patent, Claim 10) | E-mailing . . . the first information<br><br><br><br>E-mailing the authenticatable information | Ordinary meaning; no construction necessary |

Claim 1 of the '389 patent recites "[a] method of transmitting a message from a sender to

a recipient through a server displaced from the recipient, the steps at the server comprising: . . .

transmitting, before any authentication of the message, a copy of the message and the first information to the sender from the server." D. 1-4 at 37. Sophos argues that the specification and the prosecution history show that the claimed transmission in the term is by email. D. 98 at 25. RPost argues that because the claims of the '389 patent do not even use the word email, the patent should not be limited to it. D. 101 at 9.

The Court agrees with RPost. Sophos's argument rests on the Court's agreement with its contention that the '389 patent is limited to email, D. 103 at 11, D. 105 at 14, which the Court has now rejected. See supra V.B.1. Accordingly, the Court concludes that no construction of this term is necessary.[4]

### 4. "before the message is authenticated (any authentication of the message) by the server"

| Term | Sophos's Proposed Construction | RPost's Proposed Construction |
|---|---|---|
| before the message is authenticated (any authentication of the message) by the server<br><br>('389 patent, Claims 1, 8, 10, 11, 12, 14, 16)<br><br>('199 patent, Claims 1, 3, 4) | No construction necessary | before the content and delivery of the message is proved (proving the content and delivery of the message) by the server<br><br>The plain language of this phrase does not require that any authentication of the message be performed by the server |

Several claims of the '389 and the '199 patents include the phrase "before any authentication of the message," D. 1-4 at 37, claim 1, and "before the message is authenticated by the server," id. at 38, claim 10. RPost argues that the Court should adopt Judge Gilstrap's constructions of these terms in Amazon.com. D. 101 at 13. In that case, Judge Gilstrap

---

[4] The parties do not discuss the term "transmit the authenticatable information" in their briefs but add this term in their joint claim construction statement. D. 107-1 at 3. For the reasons discussed for "transmitting . . . the first information to the sender," the Court also concludes that no construction of this term is necessary.

construed "authentication of the message" to mean "proving the content and delivery of the message."   Amazon.com, 2013 WL 968246, at \*59.   He also construed "before any authentication of the message" to have its plain meaning, *i.e.*, that the clause simply requires that the transmitting step occur before any authentication of the message.   Id.   Sophos argues that the Court need not construe the term "before the message is authenticated."   D. 103 at 17-18. Sophos also disagrees with RPost's contention that "the plain language of this phrase does not require that any authentication of the message be performed by the server."   Id. at 18 (citation and internal quotation marks omitted).

The Court agrees with Sophos that no construction is necessary.   First, the construction in Amazon.com is not particularly persuasive here because the defendants in that case presented no arguments in support of their construction of their disputed terms.   Amazon.com, 2013 WL 968246, at \*59-60. Second and more importantly, the words in these terms can be readily understood by the jury.   There is no need to rephrase the term to insert language about content, proof, and delivery, particularly when, as Sophos mentioned at oral argument, the specification of the '389 patent suggests that a message's content may not be used for authentication at all. See D. 1-4 at 31, 16:61-67.

### C.   '913 Patent

*1. "protocol dialog"*

| Term | Sophos's Proposed Construction | RPost's Proposed Construction |
|---|---|---|
| protocol dialog<br><br>('913 protocol dialog, Claim 1) | A language of commands and responses used to transmit an email message from a sender to a recipient | Data including a list of at least one command and at least one response<br><br>Alternatively, SMTP or ESMTP data including a list of at least one command and at least one response generated by the electronic mail |

| | | system during transmission of the message from the server to the recipient |
|---|---|---|

Claim 1 of the '913 patent recites:

> A method of transmitting a message from a sender to a recipient through a server acting as a Mail Transport Agent, including the steps at the server of:
>
> > transmitting the message to the recipient's Mail Transport Agent in a protocol dialog selected from a group consisting of the selected one of the SMTP and ESMTP protocols; and
> >
> > recording at the server some portion of the selected one of the SMTP and ESMTP protocol dialog between the server and the recipient through the server including those portions of the selected one of the SMTP and ESMTP protocol dialog between the server and the recipient in which the receiving Mail Transport Agent accepts or declines delivery of the transmitted message.

D. 1-3 at 35. The parties dispute the term "protocol dialog" in claim 1. To construe the term, the parties rely upon many of their arguments for the term "mail transport protocol dialog." See, e.g., D. 101 at 10-11, D. 103 at 7-8, D. 105 at 10-11. In GoDaddy.com, 2016 WL 212676, at *31, Judge Teilborg construed the term "SMTP and ESMTP protocol dialog" in the same claim. He construed the term as "SMTP or ESMTP data including a list of at least one protocol command and at least one protocol response exchanged between devices during transmission of a message." Id.

For the reasons expressed above in construing "mail transport protocol dialog," the Court starts with RPost's constructions. The Court, however, adopts RPost's alternative construction because unlike for "mail transport protocol dialog," Claim 1 of the '913 patent makes clear that the "protocol dialog" is "selected from a group consisting of the selected one of the SMTP and ESMTP protocols." D. 1-3 at 35. Accordingly, the Court construes "protocol dialog" as "SMTP

or ESMTP data including a list of at least one command and at least one response generated by

the electronic mail system during transmission of the message from the server to the recipient."

> 2. *"portions of . . . dialog . . . in which the receiving Mail Transport Agent accepts or declines delivery of the transmitted message"*

| Term | Sophos's Proposed Construction | RPost's Proposed Construction |
|------|-------------------------------|-------------------------------|
| portions of … dialog … in which the receiving Mail Transport Agent accepts or declines delivery of the transmitted message<br><br>('913 patent, Claims 1 and 2) | Part of the conversation of commands and responses sufficient to show that the receiving Mail Transport Agent has accepted or declined the transmitted message | Ordinary meaning; no construction necessary |

Claim 1 of 'the 913 patent recites:

> A method of transmitting a message from a sender to a recipient through a server acting as a Mail Transport Agent, including the steps at the server of:
>
> . . .
>
>> recording at the server some portion of the selected one of the SMTP and ESMTP protocol dialog between the server and the recipient through the server including those *portions of* the selected one of the SMTP and ESMTP protocol *dialog* between the server and the recipient *in which the receiving Mail Transport Agent accepts or declines delivery of the transmitted message.*

D. 1-3 at 35 (emphasis added).  The term in dispute is in italics.  Sophos contends that there are

many parts of the SMTP/ESMTP protocol that are unrelated to acceptance or rejection of an

email message.  D. 98 at 22.  Because the claim states that the recorded portion "includ[es] those

portions of . . . dialog . . . in which the receiving Mail Transport Agent accepts or declines

delivery of the transmitted message," Sophos argues the term should read to mean the portions of

dialog that are sufficient to show that the message was accepted or declined.  Id.  RPost urges

that the plain claim language should control.  D. 101 at 12.

The Court agrees with RPost that no construction is necessary. The claim is clear as to what the recorded portion must include. Construing the term to mean that the "conversation" is "sufficient to show" whether the transmitted message has been accepted or declined injects needless ambiguity through the addition of new words (*e.g.*, "conversation") and may change the term's emphasis.

### 3. *"Mail Transport Agent"*

| Term | Sophos's Proposed Construction | RPost's Proposed Construction |
|------|-------------------------------|-------------------------------|
| Mail Transport Agent<br><br>('913 patent, Claim 1) | A program executing on a computer that routes electronic mail messages along a network path from the sender to a recipient | Software that transfers electronic messages from one computer to another |

Claim 1 of 'the 913 patent claims "[a] method of transmitting a message from a sender to a recipient through a server acting as a Mail Transport Agent." D. 1-3 at 35. Sophos contends that the term should be limited to email because the protocols named in the claim are "explicitly and indisputably used" to transmit email. D. 103 at 12. RPost argues that mail transport agent and message transport agent are interchangeable terms. D. 105 at 16. Because the claims of the '913 patent use the word "message" and not "email," RPost argues that the term "Mail Transport Agent" is not intended to be limited to email. Id. Finally, RPost notes that in GoDaddy.com, 2016 WL 212676, at *35, Judge Teilborg construed this term to mean "software that resides on a server and that transfers and received electronic messages from one computer to and from another."

The Court starts from the language in RPost's proposed construction but agrees with Sophos that this term should be limited to email. First, the protocols recited in the claims— SMTP and ESMTP—are, as the specification states, protocols for email. D. 1-3 at 34, 26:60-61

(stating that "SMTP is a protocol for sending e-mail messages between servers").  Thus, unlike the other patents-in-suit, the '913 patent has expressly confined itself to a type of message by reciting two specific protocols in the claims.  The inclusion of these two protocols, and not the use of "mail" in the term, is the decisive factor here.  Second, this construction is also consistent with RPost's alternative construction of "protocol dialog" in the same patent, which the Court has already adopted.  See supra V.C.1.  For that term, RPost would have had the Court construe "protocol dialog" as "SMTP or ESMTP data . . . generated by the electronic mail system," which suggests to the Court that RPost implicitly recognizes that the '913 patent is more properly limited to email.  Finally, Judge Teilborg's construction of the term is not persuasive here because the parties before him did not dispute, and therefore Judge Teilborg did not decide, whether the term should be limited to email.  GoDaddy.com, 2016 WL 212676, at *34-35.  The Court construes "Mail Transport Agent" as "software that transfers electronic mail messages from one computer to another."

### A.    '199 Patent

*1.  "data transport protocol dialog"*

| Term | Sophos's Proposed Construction | RPost's Proposed Construction |
|------|-------------------------------|-------------------------------|
| Data transport protocol dialog<br><br>('199 protocol dialog, Claim 1) | A conversation between a sender and a receiver consisting of commands and responses to transmit a message | Transport data including a list of at least one command and at least one response<br><br>Alternatively, transport data including a list of at least one command and at least one response exchanged between devices during the transmission of the message |

The term "data transport protocol dialog" appears in claim 1 of the '199 patent.  D. 1-5 at 35.  To construe this term, the parties rely upon their arguments from the term "mail transport protocol dialog."  See, e.g., D. 101 at 10-11, D. 103 at 7-8, D. 105 at 10-11.  In GoDaddy.com, 2016 WL 212676, at *31-32, Judge Teilborg construed the same term in the same patent as "transport data including a list of at least one command and at least one response exchanged between devices during the transmission of the message."  For the reasons expressed above in construing "mail transport protocol dialog" and in Judge Teilborg's decision, the Court adopts RPost's proposed alternative construction.  The Court construes "data transport protocol dialog" as "transport data including a list of at least one command and at least one response exchanged between devices during the transmission of the message."

## VI.    Motion for Judgment on the Pleadings

35 U.S.C. § 101 provides that "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" is eligible for patent protection.  The statute, however, "contains an important implicit exception:  [l]aws of nature, natural phenomena, and abstract ideas are not patentable."  Alice Corp. Pty. v. CLS Bank Int'l, 134 S. Ct. 2347, 2354 (2014) (citation internal quotation mark omitted).

At the same time, courts "tread carefully in construing this exclusionary principle lest it swallow all of patent law."  Id. at 2354.  "[A]ll inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."  Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1293 (2012).

The Supreme Court has established a two-step framework for analyzing patent eligibility under § 101.  First, a court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts," e.g., a law of nature or an abstract idea.  Alice, 134 S. Ct. at

2355. Second, if the claims are directed to a patent-ineligible concept, the court must ask "[w]hat else is there in the claims before us?" Id. (citation and internal quotation marks omitted). To answer that question, the court "consider[s] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." Id. (citation and internal quotation marks omitted). Step two is "a search for an inventive concept, *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." Id. (citation and internal quotation marks omitted).[5]

Sophos argues that the patents-in-suit are invalid because they claim unpatentable abstract ideas. According to Sophos, the '628 patent claims the electronic equivalent of certified mail, the '389 patent recites the concept of notifying the sender that a message was successfully delivered, the '199 patent claims the concept of notification when the certified message was not successfully delivered and the '913 patent claims the concept of using a communication system or language when delivering certified mail. D. 96 at 15-17. To Sophos, the patents-in-suit lack an inventive concept. Id. at 20. They "do not teach an algorithm or other novel technique for certifying the delivery of email," but "simply computeriz[e] concepts that the post office has

---

[5] As an initial matter, RPost argues that the Court must deny Sophos's motion because patent ineligibility is not an "authorized . . . litigation defense." D. 102 at 13. Courts, however, have made clear that parties are entitled to judgment in patent infringement cases where the invention or discovery is not patentable subject matter under 35 U.S.C. § 101. See, e.g., Alice, 134 S. Ct. at 2354-57 (affirming summary judgment because the claims did not transform the abstract idea into a patent-eligible invention); OIP Techs., Inc. v. Amazon.com, Inc., 788 F.3d 1359, 1360 (Fed. Cir. 2015) (affirming the district court's decision to grant judgment on the pleadings because the patent did not claim patentable subject matter); buySAFE, Inc. v. Google, Inc., 765 F.3d 1350, 1351 (Fed. Cir. 2014) (affirming district court's conclusion on a motion for judgment on the pleadings that the asserted claims were invalid because they covered ineligible subject matter).

been using for years." Id. at 22. "With the well-known computing elements removed, the claims are reduced to a series of steps for sending certified electronic mail." Id. at 24.

The Court disagrees with Sophos. First, the patents-in-suit do not claim the abstract idea of certified mail because their methods do more than provide proof of mailing, they also provide proof of delivery and content. D. 102 at 21; see D. 1-2 at 20, 1:19-24 (stating that "[t]his invention relates generally to a system and method for verifying delivery and content of an electronic message and, more particularly, to a system and method of later providing proof regarding the delivery and content of an e-mail message"). RPost identifies several different claims from the patents-in-suit that relate to verifying the content of messages, a task that the United States Postal Service cannot do.

Second, even if the patents-in-suit claim an abstract idea, they also claim an inventive concept sufficient to pass muster under Alice. In DDR Holdings, LLC v. Hotels.com, L.P., 773 F.3d 1245, 1257 (Fed. Cir. 2014), the Federal Circuit stated that claims that "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet" are patent-ineligible ideas. On the other hand, claims that are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks" claim an inventive concept and are patent-eligible. Id.

Sophos argues that the patents-in-suit simply duplicate a pre-internet business practice on the internet because the patents-in-suit allegedly acknowledge that their solution is directed at the same problem that exists with regular mail, namely proof of delivery. D. 96 at 25. The patents-in-suit, however, address more than that. More importantly, the patents-in-suit aim to solve a technical problem of electronic messages, which because of their form, present unique

challenges for establishing proof of receipt and delivery.  The patents-in-suit thus use an intermediate server between the sender and receiver of an electronic message to address the problem of providing reliable proof of the content and delivery of electronic messages, without requiring the cooperation of the recipient and without requiring special email software.  See DDR Holdings, 773 F.3d at 1257-58.  The patents-in-suit's technical solution thus satisfies step two of the analysis under Alice.[6]

## VII.   Conclusion

For the foregoing reasons, the disputed claim terms are construed as follows:

1. the terms "special processing, "special process," "a normal process used by the server," and "the normal process used by the server" do not require construction;

2. the term "message" does not require construction;

3. the term "mail transport protocol dialog" means "data including a list of at least one mail transport protocol command and at least one mail transport protocol response exchanged between devices during transmission of the message";

4. the terms "first route" and "second route different from the first route" do not require construction because both sides agree they refer to two different network paths, although "route" will be construed as "a path taken by a message from a sender to a recipient via a network";

5. the term "first information" means "information regarding the transmission and/or delivery of a message";

---

[6] That the Patent Trial and Appeal Board ("PTAB") denied petitions to institute covered business method patent reviews of the '389 and '913 patents tends to support this conclusion.  Although the PTAB does not review patents to determine whether they claim patent-eligible subject matter under 35 U.S.C. § 101, D. 112 at 7, D. 117 at 8, covered business method patent reviews cannot be conducted on patents for technological inventions, and the PTAB denied review because the petitioners could not meet this showing, D. 102 at 23; D. 102-3 at 8-9; D. 102-4 at 8-9.

6. the terms "transmitting . . . the first information to the sender" and "transmit the authenticatable information" do not require construction;

7. the term "before the message is authenticated (any authentication of the message) by the server" does not require construction;

8. the term "protocol dialog" means "SMTP or ESMTP data including a list of at least one command and at least one response generated by the electronic mail system during transmission of the message from the server to the recipient";

9. the term "portions of . . . dialog . . . in which the receiving Mail Transport Agent accepts or declines delivery of the transmitted message" does not require construction;

10. the term "Mail Transport Agent" means "software that transfers electronic mail messages from one computer to another";

11. the term "data transport protocol dialog" means "transport data including a list of at least one command and at least one response exchanged between devices during the transmission of the message."

The Court DENIES Sophos's motion for judgment on the pleadings, D. 95; No. 14-cv-13628, D. 71.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
