UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOPHOS INC., <br><br> Plaintiff, <br><br> v. <br><br> RPOST HOLDINGS, INC. and RPOST COMMUNICATIONS LIMITED, <br><br> Defendants. | Civil Action No. 13-12856-DJC |
| RPOST HOLDINGS, INC. and RPOST COMMUNICATIONS LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> SOPHOS INC., <br><br> Defendant. | Civil Action No. 14-13628-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                   **December 8, 2017**

### I. Introduction

Sophos, Inc. ("Sophos") seeks summary judgment on two separate grounds of the ongoing dispute between Sophos and RPost Holdings, Inc. ("RPost") and RPost Communications Limited

1

("RComm") (collectively, "the Defendants"). Specifically, Sophos seeks summary judgment on the issues of the validity of the patent, D. 201, RPost's standing to sue and the ability of RComm to recover damages, D. 207, and infringement, D. 251. The Defendants seek summary judgment on the issue of infringement. D. 221. For the following reasons, the Court DENIES Sophos' motion for summary judgment with respect to standing, D. 207, ALLOWS Sophos' motion for summary judgment on patent validity, D. 201, finding the '628 patent invalid, and DENIES as moot the remaining motions, D. 207 (as to lost profits), D. 221, D. 251.

## II. Procedural History

The procedural history of this case is accounted in more detail in this Court's prior order, D. 128 at 3. On November 12, 2013, Sophos sued the Defendants seeking a declaratory judgment that Sophos does not infringe certain patents owned by the Defendants and that those patents were invalid. D. 1. The Defendants then sued Sophos bringing a claim of infringement in a separate suit. No. 14-cv-13628-DJC, D. 1. Both cases are before the Court as related cases. On June 3, 2016, this Court issued a decision regarding the construction of certain claims in the patents at issue. D. 128. On January 11, 2017, the parties jointly stipulated to the dismissal of claims related to three of the four patents initially involved in the dispute, leaving only the claims related to U.S. Patent No. 8,504,628 ("the '628 patent"). D. 138. The Defendants contend that Sophos infringes claims 14, 19, 24, 26, 27 and 30 of the '628 patent. D. 221 at 4. On December 6, 2017, the Court heard argument and took the matter under advisement. D. 280.

## III. Standard of Review

"A motion for summary judgment is properly granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." IMS Tech., Inc. v. Haas Automation, Inc., 206 F.3d 1422, 1429 (Fed. Cir. 2000). The Court views "the evidence in

a light most favorable to the non-movant, and draw[s] all reasonable inferences in its favor." Id. "Essentially, Rule 56[ ] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Coll v. PB Diagnostic Sys., 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). This standard is not altered when there are cross-motions for summary judgment. Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996).

## IV. Factual Background

### A. The '628 Patent

The patent is entitled "System and Method for Verifying Delivery and Integrity of Electronic Messages." D. 1-2 at 2. The abstract describes the '628 patent as "[t]hird party verification of the content and delivery of an electronic message such as an email," which provides for using a server that receives an email sent to an addressee and "tags" the email to indicate that it is "registered" with the service provider. D. 1-2 at 2. The server establishes a direct connection with the addressee's Mail User Agent ("MUA"), transmits the tagged email, receives a response from the MUA that the message was received, and creates and forwards a receipt to the message originator. D. 1-2 at 2.

Claim 14 is described in the '628 patent as:

[a] method of transmitting a message from a sender to a recipient, comprising: transmitting the message to a server remote from the recipient; determining by the server if there is a particular indication present in the message that identifies the message as requiring special processing before the message is transmitted to the recipient; transmitting the message from the server to the recipient through a first route if the message lacks the particular indication; and processing the message by the server in accordance with the particular indication.

D. 1-2 at 34. Claim 19 claims "[t]he method of claim 14, wherein processing the message in a special manner includes encrypting the message to transmit the message in a more private

3

manner." D. 1-2 at 34. Claim 24 claims "[t]he method of claim 14, wherein determining if the particular indication is present in the message includes filtering the content of the message to determine whether a selected term is present in the message." Id. Claim 26 claims "[t]he method of claim 24, wherein the selected term is a flag." Id. Claim 27 claims "[t]he method of claim 26, wherein the flag is use selectable." Id. Finally, Claim 30 claims:

> [a] system for transmitting a message from a sender to a recipient, comprising: a server configured to receive a message from a sender, the server being remote from a recipient of the message, the server also being programmable using software commands to determine if there is a particular indication present in the message that identifies the message as requiring special processing before the message is transmitted to the recipient, to transmit the message from the server to the recipient through a first route if the message lacks the particular indication, and to process the message in accordance with the particular indication if the particular indication is present.

Id. The '628 patent was filed on June 4, 2010 and issued on August 6, 2013. D. 1-2 at 2. The '628 patent is a continuation of U.S. Patent No. 7,966,372 ("the '372 patent"). D. 1-2 at 2.[1] The '628 patent also relates to two other provisional patents, Provisional Application Number 60/172,479, filed on December 17, 1999, and Provisional Application Number 60/146,074, filed on July 28, 1998. D. 1-2 at 2. A personal of ordinary skill in the art regarding this patent, at the relevant time, would be a person with at least an undergraduate degree in computer science or electrical engineer, or the equivalent, and had at least one or two years of work experience implementing or maintaining email programs or computer networks. D. 203 ¶ 3.

---

[1] A continuation application is "a second application for the same invention claimed in a prior nonprovisional application and filed before the original prior application becomes abandoned or patented." Antares Pharma, Inc. v. Medac Pharma Inc., 771 F.3d 1354, 1358 (Fed. Cir. 2014) (citations and internal quotation marks omitted).

### B. Other Relevant Patents

Sophos directs the Court's attention to two other patents: U.S. Patent No. 6,609,196, to Robert Dickinson and Sathvik Krishnamurth ("Dickinson") and U.S. Patent No. 7,233,992, to John M. Muldoon et al. ("Muldoon"). D. 203 ¶¶ 4, 29. Dickinson has a relevant priority date of November 3, 1998. D. 203 ¶ 4. Muldoon was filed on January 14, 2000. D. 203 ¶ 29.

Dickinson discloses an "email firewall with stored key encryption/decryption." D. 204-2 at 2. Per the description in the abstract, the firewall "applies policies to email messages." D. 204-2 at 2. The firewall comprises a simple mail transfer protocol ("SMTP") that delivers emails from a first site and a select subset of second sites. Id. "Policy managers" enforce policies, such as encryption and decryption policies, such as a "first source/destination policy," a "first content policy," and a "first virus policy," based on administrator-selectable criteria. Id. The policy managers comprise an access manager for restricting transmission of emails in accordance with the source/destination policy; a content manager for restricting transmission of emails in accordance with the content policy; and a virus manager for restricting transmission of emails in accordance with the virus policy. Id.

In certain contexts, the email firewall in Dickinson is a server that receives emails and is remote from external recipients of the email. D. 203 ¶ 6; D. 259 ¶ 6; D. 204-2 at 15. Dickinson discloses, as examples of policy manager features, that the policy managers could support detecting the presence of specific words in the body, subject, or attachment of an email; a particular email destination; a particular size of the email; the priority of the message; the presence of a virus; the need to encrypt a message; and the presence or absence of certain user-selected flags. D. 203 ¶¶ 7-12, 27; D. 259 ¶ 9, 27; D. 204-2 at 14. Depending on whether the message contains those characteristics, the firewall may transmit the message, return the message to the sender, quarantine the message, block the message, defer the delivery of the message, annotate the message, or

5

encrypt the message. D. 203 ¶¶ 18-22, D. 259 ¶¶ 18-22. The Dickinson patent contains figures that indicate that, in a "preferred embodiment of an e-mail firewall," D. 204-2 at 13, the operation of the firewall in response to a received message would apply the policy managers before transmission to a recipient. D. 203 ¶ 13, D. 259 ¶ 13, D. 204-2 at 16, D. 204-6 at 14.

Muldoon is entitled "computerized method and system for managing the exchange and distribution of confidential documents." D. 204-3 at 2. Muldoon is directed to a "method of and system for transmitting a message from a sender to a recipient," wherein emails are received at an email server and an internet server remote from the recipient. D. 203 ¶¶ 30-32, D. 259 at 22. Muldoon also discloses a method wherein "messages to be sent via secure server may be designated as secure by adding a designator, such as @secure, to the Internet address or URL" and "[f]rom an external source such as users, secure messages can be transmitted to intranet via secure server using a similar type of addressing." D. 204-3 at 37, D. 203 ¶ 33, D. 259 ¶ 33. An email lacking the designator will be processed to route the email normally. D. 203 ¶ 35, D. 259 ¶ 35, D. 204-4 at 19. Muldoon also discloses alternate approaches to configure the mail template such that "you might have a confidential check box or you might have a check box that says secure . . . and by hitting that button or checking off that check box, it will tell that mail environment to route this particular mail message through the interlink service." D. 204-3 at 39, D. 203 ¶ 34, D. 259 ¶ 34.

### C. The Parties

The '628 patent is assigned to RComm. D. 230-1 ¶ 1. RPost is a wholly owned subsidiary of RComm. D. 230-1 ¶ 3. RPost offers, among other services, an email service called "Registered Mail" or "RMail," which "provides email senders with evidence of delivery, time of delivery, and exact message content in the form of a Registered Receipt™ email record." D. 230-1 ¶ 13, D. 261 ¶ 13. RComm, the parent company, does not sell any products or services in the United States, but rather conducts research and development concerning secure messaging technologies and

electronic messaging. D. 230-1 ¶¶ 14-15. RPost sells RMail to customers in the United States. D. 230-1 ¶ 16.

No written license agreement between RComm and RPost regarding the '628 patent has been produced, despite Sophos' request for the Defendants to produce such an agreement if it exists. D. 230-1 ¶ 6. Zafar Khan, the CEO of both RComm and RPost, however, stated at his deposition that RPost is the "exclusive licensee" of the '628 patent. D. 231 at 7. Khan could not recall when the license was granted. D. 231 at 8. Khan could not recall details about the terms of the license, specifically, whether RPost paid any consideration for the exclusive license to RComm and what specific rights RPost received under the exclusive license. D. 231 at 14-15. Khan stated that he believed that the exclusive license agreement was in writing. D. 231 at 7. When asked whether RComm offered any software services in the United States by means other than RPost, Khan replied that it may. D. 231 at 10.

Sophos develops "a number of security products for communication endpoint, encryption, network security, email security, mobile security, unified threat management ("UTM"), and other products." D. 221 ¶ 15; D. 252 ¶ 15. Included within Sophos' product line are the "SG UTM" product, with a "Fullguard" option; the "XG Firewall" product, also with a "Fullguard option;" Sophos Email Appliance; Sophos PureMessage; and Reflexion. D. 221 ¶¶ 17-20, 38 D. 252 ¶¶ 17-20, 38. Certain of these products contain features that may be enabled by the consumer including: filtering emails that contain viruses or spam, D. 221 ¶ 21, D. 252 ¶ 21; data leakage protection, D. 221 ¶ 22, D. 252 ¶ 22; and email encryption, D. 221 ¶ 23, D. 252 ¶ 23. The RPost email product, unlike the Sophos email product, does not support anti-spam protection, anti-virus protection, data loss protection, or virtual private networks. D. 230-1 ¶¶ 25-30, D. 261 at 2. Sophos' accused products, unlike RPost's product, does not offer registered email functionality.

D. 230-1 ¶¶ 34-36, D. 261 at 2. Sophos sells hardware products that are sold with software, whereas RPost does not sell hardware. D. 230-1 ¶¶ 32, 33, D. 261 at 2. According to the Defendants, RPost defines its target market as "secure and verifiable email," which it defines to mean the market for "email services that provide content and delivery proof, timestamps, tracking, electronic signatures on email contracts, or encryption for privacy." D. 230-1 ¶¶ 35-36, D. 261 at 2. In one analysis of the competitive landscape that the Defendants performed, the Defendants identified four companies as competitors, none of which were Sophos. D. 231-5 at 13; D. 230-1 ¶ 37; D. 261 ¶ 37. According to expert analysis submitted by Sophos, Sophos competes in a number of different markets, none of which RPost competes in, and Sophos does not compete in the market that RPost competes in. D. 230-1 ¶¶ 38-40, D. 261 at 2. The Defendants have not identified a single customer or sale that RPost has lost to Sophos. D. 230-1 ¶¶ 41-42, D. 261 at 2. There are several other secure email gateways that compete with Sophos' accused infringing products and offer similar services, such as anti-virus, anti-spam, data loss prevention, and email encryption. D. 230-1 ¶ 44, D. 261 at 2.

The Defendants allege that Sophos has infringed on Claims 14, 19, 24, 26, 27 and 30 of the '628 patent. D. 203 ¶ 2; D. 259 at 2.

V. Analysis

    A. <u>**Standing**</u>

A party has standing to sue for infringement of a patent if it is the owner of the patent, the assignee of the owner, or a licensee with "all substantial rights" in the patent. <u>Sicom Sys., Ltd. v. Agilent Tech. Inc.</u>, 427 F.3d 971, 976 (Fed Cir. 2005). It is the burden of the party bringing the infringement action to prove that it is standing to sue. <u>Id.</u>

Sophos challenges the standing of RPost to pursue its claims concerning the '628 patent against it and seeks summary judgment in its favor. D. 230 at 6-7. In support of this argument, it points out first, that the Defendants have never produced a written license agreement, and second, that Khan stated that RComm "may" offer software services in the United States by means other than RPost. D. 230 at 7. This, however, is not sufficient at the summary judgment stage to show, as a matter of undisputed fact, that RPost has no standing to bring its claim. Khan testified at his deposition that RPost has an exclusive license agreement to the '628 patent. Even if Sophos considers that testimony not credible in light of Khan's inability to provide details regarding that written agreement and the Defendants' failure to produce the license agreement, at summary judgment the Court is required to credit Khan's statement. Khan's lack of knowledge regarding whether RComm offered software services by means other than RPost is similarly unavailing, as there is no direct support in the record for Sophos' argument that RComm does in fact license software services that utilize the '628 patent to other entities. The cases cited by Sophos, D. 230 at 6-7, are not to the contrary, as those cases involve the undisputed absence of an exclusive license agreement, which is not the case here.

Sophos also contends that there is nothing in the record regarding any terms of the license agreement beyond Khan's characterization of the agreement as an exclusive license, which Sophos argues is insufficient for RPost to prove that it has all substantial rights in the patent. D. 230 at 7. But RPost is a co-plaintiff with the patentee, and "an exclusive licensee that does not have all substantial rights has standing to sue third parties [] as a co-plaintiff with the patentee." Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1484 (Fed. Cir. 1998). Sophos also argues that, if the license agreement is oral, it would be void under the California statute of frauds because it is a contract to be performed over a term greater than a year or it is a contract that is too uncertain and

indefinite. D. 273 at 12 n.8. The Court, however, may not at this stage infer from the Defendants' failure to product a written license agreement that any license agreement is not written and only oral, and thus unenforceable. Additionally, under California law (assuming it applies here), a non-party, such as Sophos here, to a contract may not raise the statute of frauds to void that contract. O'Banion v. Paradiso, 61 Cal. 2d 559, 562-63 (1964).

Accordingly, this Court DENIES Sophos' motion for summary judgment, D. 207, to the extent that it challenges RPost's standing to bring infringement claims related to the '628 patent.

### B. Invalidity

A patent is "presumed valid," and the "burden of establishing invalidity of a patent . . . shall rest on the party asserting such invalidity." Microsoft Corp. v. I4I Ltd. P'ship, 564 U.S. 91, 95 (2011) (quoting 35 U.S.C. § 282). "A patent is invalid for anticipation if a single prior art reference discloses each and every limitation of the claimed invention." Schering Corp. v. Geneva Pharm., 339 F.3d 1373, 1377 (Fed. Cir. 2003). "Moreover, a prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." Id. "Anticipation is a question of fact, including whether or not an element is inherent in the prior art." Atlas Powder Co. v. Ireco, Inc., 190 F.3d 1342, 1346 (Fed. Cir. 1999). Here, Sophos contends that the '628 patent is invalid for anticipation where prior art, namely two other patents, disclosed the elements claimed as to the '628 patent. The Court must first address the parties' dispute about the priority date for the '628 patent.

#### 1. Priority Date for the '628 Patent

Sophos contends that the relevant priority date for the '628 patent is July 27, 2000. D. 203 ¶ 1. The Defendants, for their part, contend that the relevant priority date is either July 28, 1999, or December 17, 1999, based on the provisional patents referenced in the '628 patent. D. 259 ¶ 1.

Sophos responds that the Defendants, in filing an interrogatory, stated that they were "not claiming a conception and reduction to practice date earlier than" the "filing date of the parent application of the '628 patent – July 27, 2000," and on that basis defended certain positions they took during discovery. D. 273 at 5. Additionally, the expert, Dr. Rajeev Surati ("Surati"), upon which the Defendants rely, stated that "I understand that RPost alleges that all of the claims of the '628 patent were reduced to practice at least as of July 27, 2000." D. 204-6 at 11. He went on to state that "I also understand that RPost has not alleged a date of invention earlier than July 27, 2000 though it reserve its right to do so. Accordingly, I will assume . . . that the priority date . . . is July 27, 2000." D. 204-6 at 11-12. Thus, Sophos contends, the Defendants are estopped from asserting a priority date earlier than July 27, 2000, because it seems inequitable to do otherwise.

However, putting aside whether the Defendants are estopped from asserting a priority date earlier than July 27, 2000, the Defendants have not succeeded in pointing to a genuine dispute of material fact regarding the potential for an earlier priority date. Because Sophos has "introduced sufficient evidence to put at issue whether there is prior art alleged to anticipate the claims being asserted, prior art that is dated earlier than the apparent effective date of the asserted patent claim," the Defendants have "the burden of going forward with evidence and argument to the contrary," Tech. Licensing Corp. v. Videotek, Inc., 545 F.3d 1316, 1329 (Fed. Cir. 2008), such as evidence "either that the prior art does not actually anticipate, or . . . that it is not prior art because the asserted claim is entitled to the benefit of a filing date prior to the alleged prior art," id. at 1327. To meet that burden, they must show that "the specification of the provisional [application] must contain a written description of the invention . . . in such full, clear, concise, and exact terms, to enable an ordinarily skilled artisan to practice the invention claimed in the non-provisional application." Amgen Inc. v. Sanofi, 872 F.3d 1367, 1380 (Fed Cir. 2017) (emphasis in original)

11

(citing Dynamic Drinkware, LLC v. National Graphics, Inc., 800 F.3d 1375, 1378 (Fed Cir. 2015)). Because Surati assumed that the Defendants would not be relying on the provisional patents for a priority date, his opinion does not contain any support for their contention now that the provisional patent applications referenced in the '628 patent meet that standard. Nor is there anything else in the record that would support a finding of a genuine dispute of material fact regarding this issue, as the only citations to the record made by the Defendants in this regard are citations to the text of the provisional patent. Thus, the Court accepts that the priority date for the '628 patent is July 27, 2000. Consequently, both Dickinson and Muldoon are properly considered prior art.

      *2. Dickinson*

Sophos argues, based on the fully developed record with expert reports from both parties, that Dickinson discloses every limitation of Claim 14 of the '628 patent. D. 202 at 9. It contends that Dickinson is a means of transmitting a message from a sender to a recipient; that the email firewall referenced in Dickinson is a server that is remote from the recipient; that the policy managers referenced in Dickinson perform the task of determination by the server of whether there is a particular indication present in the message designating the message for special processing before transmission; and that the email firewall performs the special processing if the indication is present and do not if the indication is not present. D. 203 at 2-6. In doing so, Sophos cites to the text of the '628 patent, its expert report by Dr. Justin Tygar ("Tygar"), and Surati's expert report and deposition. Id.

The Defendants first respond that Dickinson is not "a method of transmitting a message from a sender to a recipient," D. 204-1 at 34, but rather a method of selectively preventing transmission of message. D. 259 ¶ 5, D. 204-6 ¶ 108. The only citation to the record that the Defendants make in support of this argument is a citation to the text of Dickinson, which states that a significant advantage of the innovation is the ability to filter selectively or encrypt certain

12

emails, and thus does not support their contention. D. 259 ¶ 5; D. 204-2 at 12 (C: 2 L: 21-33). The flowchart of Dickinson has a step that states "transmit to specified destination" after the message moves through prior steps. D. 204-2 at 10. Tygar's expert report relies upon this figure as evidence that Dickinson does disclose transmission. D. 205 at 57. To the extent that the Defendants contend that Dickinson is not a means of transmission because, under some particular indications, Dickinson would fail to transmit a message and thus would not be "processing the message by the server in accordance with the special indication," D. 1-2 at 34, D. 1-2 at 34, that argument fails because Dickinson discloses some mechanisms of processing the message in accordance with the special indication that do involve transmission, such as deferring the delivery of the message, annotating the message, or encrypting the message. D. 203 ¶¶ 20-22, D. 259 ¶¶ 20-22.

Second, the Defendants contend that the "particular indications" in Dickinson are not indications set by senders to instruct the server what actions to take, but are rather rules set by an administrator applied to messages sent by senders. D. 258 at 14, D. 259 ¶ 14. The Defendants elaborate that whereas the Dickinson patent imposes rules on users, the '628 patent "trusts the sender to do the right thing." D. 259 ¶ 14, D. 258 at 14. Surati's opinion elaborates that Dickinson "teaches away from" the approach in the '628 patent because in Dickinson, "everything is controlled by the administrator," and "the user doesn't get the option to determine how the message is managed," whereas the '628 patent is "designed to allow the sender to notify the server about treatment of the outgoing message." D. 204-6 at 15-16. The Defendants, however, point to no support for their contention that Claim 14 requires that the user be able to select whether the message has the particular indication that flags it for special processing or that Claim 14 requires the user to be able to set the rules regarding which particular indications correspond to which

13

special processing instructions. The language of Claim 14 only speaks to "determining by the server if there is a particular indication present in the message that identifies the message as requiring special processing before the message is transmitted to the recipient." D. 1-2 at 34. To the extent that the Defendants contend that Figure 3 in the '628 patent, D. 204-1 at 11, limits the scope of Claim 14 in this way, D. 259 at 7, this Court rejected the argument in claim construction that Figure 3 limited the scope of Claim 14. D. 128 at 11-12. Moreover, the undisputed record shows that in Dickinson, messages may be subject to a particular action on the basis of the presence or absence of certain user-selected flags. D. 203 ¶¶ 27-28; D. 259 ¶¶ 27-28; D. 204-2 at 14. Surati's opinion does not address the claims in Dickinson related to user-selected flags. D. 204-6 at 14-16. Additionally, "the question whether a reference 'teaches away' from the invention is inapplicable to an anticipation analysis." Celeritas Techs., Ltd. v. Rockwell Int'l Corp., 150 F.3d 1354, 1361 (Fed. Cir. 1998). Thus, this argument also fails.

Finally, the Defendants argue that in Dickinson, "every email undergoes extra processing and the only distinction (based on sender address, recipient address, content) is what type of extra processing (decrypt, encrypt . . . , annotate, queue, block)," whereas in the '628 patent, only the messages with the particular indication go through special processing. D. 259 ¶ 15. In support of this contention, the Defendants point to two portions of Dickinson: first, figures 6A and 6B, which indicate that all messages go through the stage called "Decryption required?" and "Encryption required?" D. 204-2 at 9-10, and second, a portion of the text explaining that "[t]he steps shown in FIG. 6(b) are performed for each destination specified for a message." D. 204-2 at 16 (C: 9 L: 46-47). But, even if it is true that every email in Dickinson undergoes some level of extra processing, that claim would not support the Defendants' argument that Dickinson fails to anticipate the element of Claim 14 of "transmitting the message from the server to the recipient

through a first route if the message lacks the particular indication." D. 1-2 at 34. In this Court's claim construction decision, the Court clarified that the "first route" need not be any particular route. D. 128 at 11-12. If every email in Dickinson undergoes some processing, and only some emails undergo additional processing, then Dickinson still practices this element of Claim 14 because the "first route" as specified in Dickinson may just contain more process than the "first route" as specified in some particular embodiment of the '628 patent. This argument thus fails. There is no dispute of material fact that Dickinson anticipates Claim 14 of the '628 patent.

Sophos similarly contends that Dickinson anticipates the remaining claims of the '628 patent. D. 202 at 5-6, 9; D. 203 ¶¶ 24-28. The Defendants make no arguments with respect to these claims that they did not make with respect to Claim 14, D. 258 at 17, and the arguments they do make fail for the same reasons explained above. Thus, there is no dispute of material fact that Dickinson anticipates all the relevant claims of the '628 patent.

### 3. *Muldoon*

Sophos also contends that Muldoon anticipates every element of Claim 14 of the '628 patent. D. 202 at 11. Sophos contends that Muldoon is a method of transmitting a message from a sender to a recipient via a remote server; that Muldoon discloses determining if there is a particular indication present that identifies the message as requiring special processing, such as by using the "@secure" designator; that Muldoon discloses transmitting the message from the server to the recipient by a first route if the message lacks the @secure or other designator; and that Muldoon discloses processing the message in accordance with the particular indication of the @secure or other designator by sending the mail along the secure server route. D. 202 at 11.

The Defendants contend that Muldoon does not disclose a method of "special processing," but rather the secure mail feature of Muldoon is simply re-addressing an email to a different recipient via a change in the address of an email – which is an inherent feature in how email works

15

and thus nothing "special." D. 258 at 18-21; D. 204-6 at 17-18; D. 259 ¶¶ 33-36. That argument, however, does not account for the undisputed fact that Muldoon also disclosed another means of designating which emails are to be sent along the secure server route, beyond re-addressing the email to a different recipient: the use of a "confidential check box" or a "check box that says secure." D. 204-3 at 39, D. 203 ¶ 35, D. 259 ¶ 35. Surati does not address the check box approach disclosed in Muldoon and thus makes no argument as to why the server readdressing an email based on a check box (rather than on a different email address) would not constitute special processing. D. 204-6 at 17-19. Thus, the Defendants' contention fails. There is no genuine dispute of fact that Muldoon anticipates Claim 14 of the '628 patent.

Sophos similarly argues that Muldoon anticipates Claim 30 and the dependent claims of Claim 14. D. 202 at 5, 11-12. The Defendants respond that Muldoon does not anticipate Claim 24, Claim 26 and Claim 27 of the '628 patent. D. 258 at 21-22. Claim 24 is "[t]he method of Claim 14, wherein determining if the particular indication is present includes filtering the content of the message to determine whether a selected term is present in the message." D. 204-1 at 34. Claim 26 is "[t]he method of Claim 24, wherein the selected term is a flag." D. 204-1 at 34. Claim 27 is "[t]he method of Claim 26, wherein the flag is user selectable." D. 204-1 at 34. The Defendants argue that Muldoon does not disclose any method for filtering the content of the message, because "in Muldoon, messages are sent directly to a server, and no further processing occurs at that server other than the normal actions of the server." D. 258 at 21. This argument fails for the same reasons explained above – with respect to the check box embodiment rather than the @secure in the address line embodiment, sending the email to a different address may be special processing. The Defendants also contend that Muldoon does not disclose any limitation wherein the selected term is a "flag," or the flag is user-selectable. D. 258 at 22. But the

16

Defendants point to no support in the record for the argument that the check box itself is not a flag and Surati, in his deposition, explained that a flag could be an indication in the header of a message or a button selected by a user. D. 204-4 at 14. Thus, there is no genuine dispute of fact that Muldoon anticipates the remaining relevant claims of the '628 patent.

For all of the aforementioned reasons, the Court concludes that the '628 patent is invalid.

## VI. Conclusion

For the foregoing reasons, the Court DENIES Sophos' motion for summary judgment with respect to standing, D. 207, ALLOWS Sophos' motion for summary judgment on patent validity, D. 201, finding the '628 patent invalid, and DENIES as moot the remaining summary judgment motions, D. 207 (as to lost profits), D. 221, D. 251.[2]

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[2] The Court DENIES Sophos' motion to strike, D. 182, as moot.